# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

ROBIN ANDREW DUNN,

Plaintiff,

v.

DAVID B. LONG, Secretary,

Defendant.

Case No.:  14-cv-1557-H-BLM

**ORDER:**

**(1) DENYING PETITION FOR WRIT OF HABEAS CORPUS;**

**(2) ADOPTING REPORT AND RECOMMENDATION; AND**

**(3) DENYING CERTIFICATE OF APPEALABILITY**

On June 26, 2014, Petitioner Robin Andrew Dunn, a state prisoner proceeding *pro se* and *in forma pauperis*, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his state court conviction.  (Doc. No. 1.)  On September 5, 2014, Respondent David B. Long filed a response to the petition.  (Doc. No. 6.)  On September 29, 2014, Petitioner filed a traverse.  (Doc. No. 8.)  On March 12, 2015, the magistrate judge issued a report and recommendation, recommending that the Court deny the petition for writ of habeas corpus.  (Doc. No. 9.)  On May 20, 2015, Petitioner filed objections to

1

the magistrate judge's R & R, (Doc. No. 13), and on June 24, 2015, Petitioner filed an amendment to his objections to the R & R. (Doc. No. 16.) After careful consideration, the Court denies the petition for writ of habeas corpus and adopts the magistrate judge's R & R.

## Background

### I.   Factual History

The Court adopts the facts from the California Court of Appeal opinion denying Petitioner's direct appeal and affirming his conviction. See People v. Dunn, 205 Cal. App. 4th 1086 (2012). (See Doc. No. 7-29, Lodgment No. 8.) This Court, pursuant to 28 U.S.C. § 2254(e)(1), presumes the following facts to be correct:

A. [Petitioner]'s Molestation of Minor

In the summer of 2007, [Petitioner] and a relative who was eight years old at the time (hereafter Minor) lived in an apartment with [Petitoner]'s girlfriend, Ava Loftis. Several relatives of Loftis also lived in the apartment.

One night, while Loftis was at work, Minor watched a movie with [Petitioner] in the master bedroom and then went to sleep on the floor. [Petitioner] picked Minor up from the floor, laid her supine on the bed, removed her pajama bottoms and underwear, and lowered his own underwear. Then, in the words of Minor, Dunn got "on top of [her]," "humped" her, and touched his "private part" to her "private part" in a way that hurt her. [FN1] As Minor tried to push Dunn away, she told him "to get off [her] and [she] wasn't his girlfriend," but Dunn told her to be quiet.

FN1: At trial, when Minor was given diagrams depicting frontal views of a man and a woman, she circled the genital areas to indicate what she meant by "private parts."

Dunn eventually got off Minor, who went back to the floor and lay down. Approximately five minutes later, Dunn lifted Minor back onto the bed, and again touched his "private part" to her "private part."

B. Minor's Reports of the Molestation

The following morning, Loftis's son told Minor he heard her say, "Stop. You're nasty. I'm not Ava," and asked her why she said that. [FN2] Minor told him what Dunn had done to her in the bedroom.

FN2: One of Loftis's nephews also heard Minor say, "I'm not Ava"; and another nephew heard her say, "Stop. Get off me. You're nasty. I'm not Ava."

When Loftis returned home from work, Minor also told her that Dunn "was feeling on her and humping on her." A few days later, Loftis and Minor telephoned and reported the molestation to Minor's mother (hereafter Mother), who immediately went to Loftis's apartment to pick up Minor.

Mother took Minor to a hospital. While there, Minor met with a social worker and informed her that she (Minor) was in the hospital because [Petitioner] had "humped" her and touched her with his penis "inside [her] pants."

Minor also spoke to a police officer at the hospital. She told the officer she was at the hospital because "she had humped [Petitioner]," and explained that "'humped' meant that two people lie down, one on top of the other, and they don't wear any clothes and then they go up and down." Minor also told the officer that Dunn had taught her what "humped" means.

Minor later repeated this account of the molestation to a forensic interviewer. During the videotaped interview, which was played for the jury, Minor used anatomically correct dolls to illustrate how [Petitioner] had "humped" her. Minor pointed to the "private" on the male doll and stated Dunn put that "[i]nside" her "private."

C. Minor's Sexual Assault Examination

After Mother and Minor left the hospital, Mother immediately took Minor to be examined by Marilyn Kaufhold, a pediatrician specializing in child abuse. Kaufhold examined Minor's genitalia and anus, but found nothing of significance that was abnormal.

14-cv-1557-H-BLM

Kaufhold testified that a normal physical examination was consistent with Minor's report that [Petitioner] had "humped" her and it hurt, provided [Petitioner] had rubbed his penis against Minor's vulva (or external genitalia) but had not inserted it into her vagina. Kaufhold explained that young children generally do not know the anatomy of their genitals or understand how the various parts "fit together." Thus, a girl might say something went "inside" her if it went "inside the labia and in the vestibule without going into the anatomic vagina." If Dunn's penis had actually penetrated Minor's vagina, however, Kaufhold would expect to have found "serious tears" requiring surgical repair.

D. Minor's Diagnosis with Syphilis

Approximately six weeks after Mother took Minor to Kaufhold, Mother took Minor to her regular pediatrician, Genevieve Minka, for a scheduled appointment. Mother informed Minka that Minor had a discharge in her underwear, and Minor's vulva "had a sore spot" and "looked swollen like somebody was messing with her." Minka observed a circular ulcer with a raised edge on Minor's right labium majus. The lesion extended from the outer to the inner aspect of the right labium majus; to visualize it fully, Minka had to separate Minor's labia majora. Minka also detected redness and enlarged lymph nodes in Minor's groin. Based on these physical findings and the history of sexual abuse, Minka suspected Minor might have a sexually transmitted disease and ordered her blood tested. The test came back positive for syphilis.

Before this diagnosis of Minor with syphilis, neither Minor nor Mother had been diagnosed with or treated for that disease. Subsequently, Mother's blood tested negative for syphilis, but [Petitioner]'s tested positive.

Kenneth Katz, a public health practitioner who specializes in sexually transmitted diseases, testified at trial about the transmission of syphilis. Katz explained that syphilis is a sexually transmitted disease caused by a bacterium that infects the body at the site of exposure and then spreads throughout the whole body. According to Katz, the disease spreads from one person to another when the skin or mucous membrane of an infected person comes into contact with the skin or mucous membrane of another person.

Katz further explained that the initial stage of syphilis produces a

14-cv-1557-H-BLM

characteristic ulcer called a "chancre," which appears between 10 and 90 days after initial exposure and expands concentrically outward from the point of exposure. According to Katz, a chancre is highly infectious; and in the vast majority of cases, a person contracts syphilis when the person's skin or mucous membrane comes into contact with a chancre of an infected person.

The prosecutor presented Katz with a hypothetical based on the facts of this case and asked whether he had an opinion as to how Minor contracted syphilis. Katz testified it was "likely" she got it from [Petitioner].

Dunn, 205 Cal. App. 4th at 1088-91. In addition, the Court adopts the detailed discussion of the facts presented at Petitioner's trial set forth in the magistrate judge's R & R. (Doc. No. 9 at 4-14.)

## II.   State Procedural History

On June 8, 2010, the State filed an Amended Information charging Petitioner with one count of sexual intercourse with a child 10 years of age or younger in violation of California Penal Code § 288.7(a) (count one); and one count of committing a lewd act on a child under the age of 14 years of age in violation of California Penal Code § 288(a) (count two). (Doc. No. 7-2, Lodgment No. 1 at CT 6-7.) With respect to count two, the Amended Information also contained two sentencing enhancement special allegations: (1) that Petitioner had engaged in substantial sexual conduct with the minor victim within the meaning of California Penal Code § 1203.066(a)(8); and (2) that Petitioner personally inflicted great bodily injury upon the minor victim within the meaning of California Penal Code § 12022.8. (Id.) The Amended Information also alleged that Petitioner had four prior felony convictions and had served three prior prison terms. (Id. at CT 7-9.)

On July 23, 2010, the jury found Petitioner guilty on both counts. (Doc. No. 7-4, Lodgment No. 1 at CT 283-84.) With respect to the conviction on count two, the jury also found true the two sentencing enhancement special allegations. (Id. at CT 284.) On July 30, 2010, the trial court found true the allegations concerning Petitioner's prior felony convictions and prison terms. (Id. at CT 288.) On September 24, 2010, the trial court

5

sentenced Petitioner to 28 years to life in state prison and entered judgment. (Id. at CT 289-90.)

Petitioner appealed the judgment. On appeal, Petitioner argued that the judgment should be reversed because "(1) the trial court abused its discretion in denying his motion for mistrial, which was based upon the failure of his retained expert witness to appear at trial; and (2) trial counsel provided ineffective assistance by failing to subpoena the expert witness to appear at trial." Dunn, 205 Cal. App. at 1088. (See Doc. Nos. 7-26, 7-28, Lodgment Nos. 5, 7.) On May 7, 2012, the California Court of Appeal rejected Petitioner's argument and affirmed the judgment in a published decision. See Dunn, 205 Cal. App. at 1088, 1102. Petitioner filed a petition for review in the California Supreme Court raising the same claims. (Doc. No. 7-30, Lodgment No. 9.) On August 8, 2012, the California Supreme Court denied the petition for review in an order stating: "The petition for review is denied." (Doc. No. 7-31, Lodgment No. 10.)

On June 27, 2013, Petitioner filed a state habeas petition in San Diego County Superior Court. (Doc. No. 7-32, Lodgment No. 11.) The Superior Court denied the habeas petition. (Doc. No. 7-33, Lodgment No. 12.)

On October 9, 2013, Petitioner filed a state habeas petition in the California Court of Appeal, alleging claims that the trial court erred in making certain evidentiary rulings and that his counsel was ineffective for various reasons. (Doc. No. 7-34, Lodgment No. 13.) On October 24, 2013, the California Court of Appeal denied the habeas petition on the grounds that "[t]he petition is procedurally barred because the claims here could have been raised on appeal." (Doc. No. 7-35, Lodgment No. 14.) The Court of Appeal also denied the petition on the grounds that the claims are "unsupported, speculative and conclusory, and fail to state a prima facie case for relief." (Id.)

On January 23, 2014, Petitioner filed a state habeas petition in the California Supreme Court, again alleging claims that the trial court erred in making certain evidentiary

ruling and that his counsel was ineffective for various reasons.  (Doc. No. 7-36, Lodgment No. 15.)  On April 23, 2014, the California Supreme Court denied the petition, stating that the petition is "denied on the merits with regard to petitioner's claim of ineffective assistance of trial counsel."[1]  (Doc. No. 7-37, Lodgment No. 16; Doc. No. 1 at 17.)

## III.   Federal Procedural History

On June 26, 2014, Petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (Doc. No. 1.)   In the habeas petition, Petitioner alleges due process violations and also alleges ineffective assistance of counsel in violation of the Sixth Amendment.  (Id. at 6-7.)   On September 5, 2014, Respondent filed a response to the petition.  (Doc. No. 6.)  On September 29, 2014, Petitioner filed a traverse.  (Doc. No. 8.)

On March 12, 2015, the magistrate judge issued a report and recommendation, recommending that the Court deny the petition for writ of habeas corpus.  (Doc. No. 9.)  On May 20, 2015, Petitioner filed objections to the magistrate judge's R & R, (Doc. No. 13), and on June 24, 2015, Petitioner filed an amendment to his objections to the R & R.  (Doc. No. 16.)

On July 9, 2015, Petitioner filed a motion to amend his habeas petition to add a claim challenging the state trial court's fine and restitution order.  (Doc. No. 18.)  On September 15, 2015, the Court denied Petitioner's motion to amend the habeas petition on the ground of futility.  (Doc. No.  19.)  In the order, the Court explained that the proposed amendment would be futile because:  "The Ninth Circuit has 'repeatedly recognized that the imposition of a fine, by itself, is not sufficient to meet § 2254's jurisdictional requirements.'  Thus, § 2254 'does not confer jurisdiction over a state prisoner's in-custody challenge to a restitution order imposed as part of a criminal sentence.'"  (Id. at 2-3 (quoting Bailey v.

---

[1]     In addition, Petitioner went through a second round of state habeas review, raising a claim challenging the trial court's order imposing a restitution fine.  (See Doc. Nos. 7-38, 7-42, Lodgment Nos. 17-21.)

7

Hill, 599 F.3d 976, 979, 982 (9th Cir. 2010).)  See also Dunn v. McDowell, No. 15-cv-93-H (WVG), Docket No. 4 (S.D. Cal., Order filed Mar. 10, 2015).

## Discussion

## I.   Legal Standards for § 2254 Habeas Petition

A federal court may review a petition for writ of habeas corpus by a person in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); accord Swarthout v. Cooke, 562 U.S. 216, 219 (2011) ("[F]ederal habeas corpus relief does not lie for errors of state law." (quoting Estelle v. McGuire, 502 U.S. 62, 67 (1991)) (internal quotation marks omitted)).  "Habeas corpus is an 'extraordinary remedy' available only to those 'persons whom society has grievously wronged . . . .'"  Juan H. v. Allen, 408 F.3d 1262, 1270 (9th Cir. 2005) (quoting Brecht v. Abrahamson, 507 U.S. 619, 633-34 (1993)).  Because Petitioner filed the present petition after April 24, 1996, the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs the petition.  See Lindh v. Murphy, 521 U.S. 320, 322-23 (1997); Chein v. Shumsky, 373 F.3d 978, 983 (9th Cir. 2004) (en banc).

Under AEDPA, a petition for writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim":

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Cullen v. Pinholster, 563 U.S. 170, 181 (2011).  "This is a 'difficult to meet,' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'"  Pinholster, 563 U.S. at 181

8

(citations omitted).  "Section 2254(d) thus demands an inquiry into whether a prisoner's 'claim' has been 'adjudicated on the merits' in state court; if it has, AEDPA's highly deferential standards kick in."  Davis v. Ayala, 135 S. Ct. 2187, 2198 (2015).  "The petitioner carries the burden of proof."  Pinholster, 563 U.S. at 181.

Under § 2254(d)(1), a federal court may grant habeas relief only if the state court's decision was "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  The Supreme Court has explained that "§ 2254(d)(1)'s 'contrary to' and 'unreasonable application' clauses have independent meaning.'"  Bell v. Cone, 535 U.S. 685, 694 (2002); see Williams v. Taylor, 529 U.S. 362, 404-05 (2000) (distinguishing the "contrary to" and the "unreasonable application" standards).  "A state-court decision is 'contrary to' [the Supreme Court's] clearly established precedents if it 'applies a rule that contradicts the governing law set forth in our cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.'"  Early v. Packer, 537 U.S. 3, 8 (2002) (quoting Williams, 529 U.S. at 405-06).  A state court decision is "an unreasonable application" of the Supreme Court's clearly established precedent if "the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case" or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply."  Williams, 529 U.S. at 407.  Under the "unreasonable application" prong, "the state court's decision must have been more than incorrect or erroneous."  Wiggins v. Smith, 539 U.S. 510, 520 (2003).  The state court's application of the relevant precedent must have been objectively unreasonable.  Id.; Lockyer v. Andrade, 538 U.S. 63, 76 (2003); see also Harrington v. Richter, 562 U.S. 86, 100 (2011) ("A state court's determination that a claim

lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision.").

"Section 2254(d)(1)'s 'clearly established' phrase 'refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" Lockyer, 538 U.S. at 71; accord Greene v. Fisher, 132 S. Ct. 38, 44 (2011); see also Parker v. Matthews, 132 S. Ct. 2148, 2155 (2012) ("[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.'"). Further, "review under 28 U.S.C. § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Pinholster, 131 S. Ct. at 1398.

Under § 2254(d)(2), a federal court may grant habeas relief only if the state court's decision "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Under this provision, "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Wood v. Allen, 558 U.S. 290, 301 (2010) ("[E]ven if '[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede the trial court's . . . determination.'"). "Instead, § 2254(d)(2) requires that [the federal habeas court] accord the state trial court substantial deference." Brumfield v. Cain, 135 S. Ct. 2269, 2277 (2015).

In conducting an analysis under AEDPA, a federal habeas court looks to the last reasoned state-court decision. Castellanos v. Small, 766 F.3d 1137, 1145 (9th Cir. 2014); Murray v. Schriro, 745 F.3d 984, 996 (9th Cir. 2014). Where there is an unexplained decision from the state's highest court, the federal habeas court "looks through" to the last reasoned state court decision and presumes that the unexplained opinion rests upon the same ground. Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991); see, e.g., Brumfield, 135 S. Ct. at 2276. Where no state-court decision furnishes a basis for the state court's

underlying reasoning, the court must engage in an independent review of the record and ascertain whether the state court's decision was objectively unreasonable. <u>Castellanos</u>, 766 F.3d at 1145; <u>see also</u> <u>Richter</u>, 562 U.S. at 98 ("Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief.").

In addition, even if a federal habeas petitioner has established that a constitutional error occurred, the petitioner is not entitled to habeas relief based on a trial error unless the petitioner can establish that the error "resulted in 'actual prejudice.'" <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637 (1993); <u>accord</u> <u>Ayala</u>, 135 S. Ct. at 2197. "Under that standard, an error is harmless unless it had substantial and injurious effect or influence in determining the jury's verdict." <u>Fry v. Pliler</u>, 551 U.S. 112, 116 (2007) (internal quotation marks and citation omitted). Further, "[t]here must be more than a 'reasonable possibility' that the error was harmful." <u>Ayala</u>, 135 S. Ct. at 2198.

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1); <u>accord</u> Fed. R. Civ. P. 72(b)(3). If a party objects to any portion of the magistrate's report, the district court reviews de novo those portions of the report. <u>Id.</u>; <u>see also</u> <u>United States v. Reyna-Tapia</u>, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) ("The statute makes it clear that the district judge must review the magistrate judge's findings and recommendations de novo *if objection is made*, but not otherwise." (emphasis in original)).

## II. Petitioner's Due Process Claims

Petitioner alleges due process violations based on: (a) the denial of a motion for mistrial based on the unavailability of a defense medical expert witness; (b) the exclusion of evidence of an investigation of the victim's mother by child welfare authorities; (c) the denial of a motion to substitute defense counsel; (d) prosecutorial misconduct; and (e) bias by the trial court. (Doc. No. 1 at 6.) The Court addresses the merits of each of these claims.

A.     The Trial Court's Denial of Petitioner's Motion for Mistrial

Petitioner argues that his due process rights were violated when the trial court denied his motion for mistrial based on the unavailability of a defense medical expert witness. (Doc. No. 1 at 6.)  This claim was raised on direct appeal and denied by the state courts. (See Doc. Nos. 7-26, 7-29, 7-30, 7-31, Lodgment Nos. 5, 8, 9, 10.)  Thus, in conducting the § 2254(d) review, the Court looks through the California Supreme Court's summary denial of Petitioner's petition for review and evaluates the California Court of Appeal's reasoned decision denying Petitioner's due process claim.  See, e.g., Brumfield, 135 S. Ct. at 2276; Cannedy, 706 F.3d at 1156.  In denying Petitioner's claim, the California Court of Appeal explained:

> If Dunn was proceeding on the theory that penetration of Minor's vagina was required for conviction, he was wrong on the law.  The conviction on count 1 required proof that Dunn had "sexual intercourse" with Minor (§ 288.7, subd. (a)), which required penetration of her labia majora, not her vagina.  (People v. Quintana (2001) 89 Cal. App. 4th 1362, 1364, 108 Cal. Rptr. 2d 235; People v. Karsai (1982) 131 Cal. App. 3d 224, 232, 182 Cal. Rptr. 406, disapproved on other grounds by People v. Jones (1988) 46 Cal. 3d 585, 600, fn. 8, 250 Cal. Rptr. 635, 758 P.2d 1165.)  The offense charged in count 2 (lewd act on minor, § 288, subd. (a)) "was committed when [Dunn] placed his . . . exposed penis on [Minor's vulva], thereby touching her body with the specific intent to arouse, appeal to, or gratify his or her sexual desires. Penetration is irrelevant for this charge . . . ."  (In re Asencio (2008) 166 Cal. App. 4th 1195, 1206, 83 Cal. Rptr. 3d 400.)[FN8]  The trial court correctly instructed the jury on these legal principles, including the modification requested by the People that labial penetration was sufficient for conviction on count 1 (see CALCRIM Nos. 1110, 1127), and the jury was bound to follow these instructions (§ 1126; In re Stankewitz (1985) 40 Cal. 3d 391, 399, 220 Cal. Rptr. 382, 708 P.2d 1260).  Nothing in [the proposed expert's] testimony could have had any impact on the controlling law the jury had to apply.  (See, e.g., Staten v. Superior Court (1996) 45 Cal. App. 4th 1628, 1635, 53 Cal. Rptr. 2d 657 [expert witness may not give opinion on question of law].)

> If instead Dunn was proceeding on the theory that Minor was claiming

1
2
3
4
5
6
7
8
9
10
11
12
13
14

Dunn had inserted his penis into her vagina, Ticson's expected testimony that such insertion was inconsistent with the lack of any observable injury to Minor's genitalia would have added nothing of value at trial.  As noted earlier, the People's expert witness, Kaufhold, had already testified she found no injuries when she examined Minor's genitalia, but she would have expected to see "serious tears" requiring surgical repair if Dunn had actually inserted his penis into Minor's vagina.  Moreover, during closing arguments the prosecutor argued:  "There's no evidence here and no one's saying that Mr. Dunn penetrated [Minor's] anatomical vagina . . . .  [But] if his penis is rubbing up and down and it broke the barrier of her labia majora, that's penetration."  Thus, because [the proposed expert's] testimony concerning penetration would not have contradicted Kaufhold's testimony or negated the People's legally sufficient theory of the case, [the proposed expert]'s testimony would not have affected the result of the trial, a factor further supporting the trial court's denial of Dunn's mistrial motion.  (See People v. Ochoa (1998) 19 Cal. 4th 353, 473, 79 Cal. Rptr. 2d 408, 966 P.2d 442 [no abuse of discretion in denying new trial motion based on new testimony when defendant failed to show different result was probable on retrial]; Goodale, supra, 33 Cal. App. 2d at pp. 88–89, 91 P.2d 163 ["An appellate court is not permitted to grant a new trial to allow a defendant to introduce evidence that is cumulative."].)

15
16

Dunn, 205 Cal. App. 4th at 1098-99 (footnotes omitted).

17
18
19
20
21
22
23
24
25
26
27

The California Court of Appeal's decision was not contrary to or an unreasonable application of clearly established Supreme Court precedent.  "'[T]he Constitution guarantees criminal defendants "a meaningful opportunity to present a complete defense."'"  Nevada v. Jackson, 133 S. Ct. 1990, 1992 (2013) (quoting Crane v. Kentucky, 476 U.S. 683, 690 (1986)).  This right includes "[t]he right to offer the testimony of witnesses, and to compel their attendance, if necessary."  Washington v. Texas, 388 U.S. 14, 19 (1967).  This constitutional guarantee is rooted in the Due Process Clause of the Fourteenth Amendment and the Compulsory Process Clause of the Sixth Amendment.  See Holmes v. S. Carolina, 547 U.S. 319, 324 (2006); Crane, 476 U.S. at 690; see also Moses v. Payne, 555 F.3d 742, 757 (9th Cir. 2009) ("The Supreme Court has indicated that a defendant's right to present a defense stems both from the right to due process provided by

28

the Fourteenth Amendment, and from the right 'to have compulsory process for obtaining witnesses in his favor' provided by the Sixth Amendment." (citations omitted)).

However, "[a] defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions." United States v. Scheffer, 523 U.S. 303, 308 (1998). "A defendant's interest in presenting such evidence may thus bow to accommodate other legitimate interests in the criminal trial process." Id. (internal quotation marks omitted). Specifically, "[i]n the exercise of this right," a criminal defendant "must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." Chambers v. Mississippi, 410 U.S. 284, 302 (1973). Further, the right is only implicated when the testimony the defendant seeks to admit is "relevant and material to the defense." Washington, 388 U.S. at 23; see Crane, 476 U.S. at 689 (explaining that the Constitution leaves trial judges "'wide latitude'" to exclude evidence that is repetitive, only marginally relevant, or poses an undue risk of harassment, prejudice, or confusion of the issues). A trial court only violates a defendant's right to present a defense through the exclusion of evidence pursuant to a rule of evidence when the exclusion is arbitrary or disproportionate to the purposes the exclusionary rule applied is designed to serve and "where it has infringed upon a weighty interest of the accused." Scheffer, 523 U.S. at 308; accord Rock v. Arkansas, 483 U.S. 44, 56 (1987).

Petitioner argues that the trial court's denial of his motion for a mistrial based on the unexpected unavailability of his expert witness Dr. Tiscon violated his due process rights because it deprived him of the opportunity to present evidence on a critical element of his case, specifically the penetration element. (Doc. No. 1 at 6; Doc. No. 7-26, Lodgment No. 5 at 13-26.) See Dunn, 205 Cal. App. 4th at 1092, 1097. In affirming the trial court's denial of Petitioner's motion for mistrial, the California Court of Appeal noted that Petitioner never clearly articulated his precise position on the issue of penetration and how

Dr. Tiscon's expected testimony would support his theory.  <u>Dunn</u>, 205 Cal. App. 4th at 1097.  (<u>See</u> Doc. No. 7-16, Lodgment No. 3 at RT 1001-05.)  The Court of Appeal then determined that Dr. Ticson's expected testimony would not have changed the result of the trial because the expected testimony from Dr. Tiscon, would not have contradicted the testimony of the State's expert witness, Dr. Kaufhold, and would not have negated the State' theory of the case as to Petitioner's guilt.  <u>See</u> <u>Dunn</u>, 205 Cal. App. 4th at 1096-99.  The California Court of Appeal's determination with respect to this issue was reasonable.

To the extent Dr. Tiscon would have testified consistent with the theory that penetration of the victim's anatomical vagina was required for a conviction, such testimony would have been inconsistent with the applicable law and irrelevant to the ultimate determination of the Petitioner's guilt.  Here, Petitioner was charged with one count of sexual intercourse with a child 10 years of age or younger in violation of California Penal Code § 288.7(a); and one count of committing a lewd act on a child under the age of 14 years of age in violation of California Penal Code § 288(a).  (Doc. No. 7-2, Lodgment No. 1 at CT 6-7.)  With respect to count one, California courts have held that the term "sexual intercourse" contained in section 288.7(a) "means any penetration, no matter how slight, of the vagina or genitalia by the penis."  <u>People v. Mendoza</u>, 240 Cal. App. 4th 72, 79 (2015); <u>see also</u> CALCRIM No. 1127.  California courts have further held that the term "penetration" does not require penetration of the anatomical vagina.  <u>See</u> <u>People v. Quintana</u>, 89 Cal. App. 4th 1362, 1371 (2001) ("[C]ontact with the hymen as well as the clitoris and the other genitalia inside the exterior of the labia majora constitutes 'sexual penetration' . . . ."); <u>People v. Karsai</u>, 131 Cal. App. 3d 224, 232 (1982) ("The penetration which is required is sexual penetration and not vaginal penetration.  Penetration of the external genital organs is sufficient to constitute sexual penetration and to complete the crime of rape even if the rapist does not thereafter succeed in penetrating into the vagina."), <u>disapproved of on other grounds by</u> <u>People v. Jones</u>, 46 Cal. 3d 585 (1988).  With respect

14-cv-1557-H-BLM

to count two, California courts have explained that section 288(a) does not require penetration.[2]  See In re Asencio, 166 Cal. App. 4th 1195, 1206 (2008) ("Penetration is irrelevant for this charge.").  The trial court properly instructed the jury consistent with these holdings.  (Doc. No. 7-18, Lodgment No. 3 at RT 1174-77; Doc. No. 7-4, Lodgment No. 1 at CT 161-62.)  Accordingly, any testimony by Dr. Tiscon in support of a theory that penetration of the victim's anatomical vagina was necessary for a conviction would have been contrary to the applicable law.

Further, to the extent Dr. Tiscon would have testified consistent with the theory that Petitioner never penetrated the victim's anatomical vagina, such testimony would have been consistent with the State's own expert witness.  The State's expert witness Dr. Kaufhold testified before the jury that she found no signs of trauma or injury when she examined the victim's genitalia on September 21, 2007, and that if penetration of the anatomical vagina had occurred, she would have expected to see serious injuries.  (Doc. No. 7-15, Lodgment No. 3 at RT 901, 907-08, 919, 921-22.)   Consistent with this testimony, the prosecutor told the jury during closing arguments:  "There's no evidence here and no one's saying that [Petitioner] penetrated [the victim's] anatomical vagina."[3]  (Doc. No. 7-18, Lodgment No. 3 at RT 1208; see also id. at RT 1189.)

---

[2]      With respect to count two, Petitioner was also charged with the sentencing enhancement allegation of engaging in substantial sexual conduct with a victim under 14 years of age under California Penal Code § 1203.066(a)(8).  (Doc. No. 7-2, Lodgment No. 1 at CT 6-7.)  This sentencing enhancement also does not require penetration as a necessary element.  See Cal. Pen. Code § 1203.066(b) ("'Substantial sexual conduct' means penetration of the vagina or rectum of either the victim or the offender by the penis of the other or by any foreign object, oral copulation, or masturbation of either the victim or the offender."); People v. Terry, 127 Cal. App. 4th 750, 771-72 (2005).

[3]      In addition, any contention that Dr. Tiscon's expected testimony would have rebutted Dr. Minka's testimony is entirely speculative.  In moving for a mistrial, defense counsel stated that he planned on asking Dr. Tiscon to review Dr. Minka's notes, which defense counsel contended showed that the chancre was actually on the outside of the victim's labia.  (Doc. No. 7-17, Lodgment No. 3 at RT 1079-80.)  Defense counsel never proffered that Dr. Tiscon had actually formed an opinion as to Dr. Minka's notes.  (See id.)

16

1    In sum, Dr. Tiscon's expected testimony was repetitive of Dr. Kaufold's testimony
2    and the prosecution's concession that there was no evidence that Petitioner had penetrated
3    the victim's anatomical vagina, and Dr. Tiscon's expected testimony was irrelevant to
4    ultimate determination of Petitioner's guilt as to the penetration element.  Therefore, the
5    trial court's denial of Petitioner's motion for mistrial based on the unexpected
6    unavailability of Dr. Tiscon did not violate Petitioner's right to present a defense.  The right
7    present a defense is not implicated where a defendant seeks to introduce evidence that is
8    irrelevant or repetitive.  See Crane, 476 U.S. at 689; Washington, 388 U.S. at 23.
9    Accordingly, the California Court of Appeal's decision affirming the trial court's denial of
10   Petitioner's motion for a mistrial was not contrary to or an unreasonable application of
11   clearly established Supreme Court precedent regarding the right to present a defense.

12   Moreover, even assuming that the trial court's denial of Petitioner's motion for a
13   mistrial constituted a constitutional error, it is clear from the record that any such error was
14   harmless under the standard set forth in Brecht.  As explained above, Dr. Ticson's expected
15   testimony regarding the issue of penetration would have been repetitive of Dr. Kaufhold's
16   testimony and would have irrelevant to the jury's determination as to Petitioner's guilt
17   because neither of the charged offenses required penetration of the victim's anatomical
18   vagina as an element of the offense.  Further, Dr. Ticson's proposed testimony would not
19   have rebutted or undermined the other evidence of penetration in the record -- in particular,
20   (1) the victim's testimony that Petitioner touched his private part to her private part and
21   that it hurt,[4] (Doc. No. 7-15, Lodgment No. 3 at RT 779-80, 783); (2) evidence showing
22   that Petitioner's blood tested positive for syphilis, (id. at RT 857-58); (3) Dr. Minka's
23   testimony that after the incident, she diagnosed the victim with syphilis and that she had to

24
_____

25   [4]    The Court notes that the victim's testimony was consistent with what she had earlier told Officer
26   Tansey during an interview at the hospital and what she had earlier said during a videotaped interview
     conducted by a forensic interviewer.  (See Doc. No. 7-3, Lodgment No. 1 at CT 108-09; Doc. No. 7-15,
27   Lodgment No. 3 at RT 835-37.)

28

manipulate the victim's labia majora to see the full extent of the syphilitic lesion, (Doc. No. 7-16, Lodgment No. 3 at RT 980-88); (4) Dr. Katz's testimony that a syphilitic lesion forms at the point of contact within 10 to 90 days of exposure, (id. at RT 1022-24); and (5) Dr. Kaufhold's testimony that Petitioner could have penetrated the vestibule right outside the victim's vaginal opening and that would have been consistent with her finding of no injuries during the examination she performed, (Doc. No. 7-15, Lodgment No. 3 at RT 904-07).  Accordingly, the Court denies this claim of the petition.

B.    The Trial Court's Exclusion of Evidence Related to an Investigation of the Victim's Mother by Child Welfare Authorities

Petitioner argues that his constitutional rights were violated by the trial court's refusal to allow Petitioner to cross-examine the victim's mother about an investigation by the Atlanta child welfare authorities.  (Doc. No. 1 at 6.)  During the trial, on cross-examination, the victim's mother responded "no" when Petitioner's counsel asked her if there was a reason why she moved back to San Diego from Atlanta.  (Doc. No. 7-13, Lodgment No. 3 at RT 538.)  Defense counsel then asked her:  "Was there an investigation that took place in Atlanta by the Welfare Department --."  (Id.)  The prosecution objected to this question based on lack of relevance and that any probative value would be outweighed by the danger of undue prejudice, consumption of time, or misleading the jury. (Id.)  The trial court then held a side bar on the issue.  (Id. at RT 539.)

During the side bar, defense counsel proffered that there was an investigation by the Welfare Department in Atlanta where the victim had admitted that she had orally copulated her brother.  (Id. at RT 539-40.)  Defense counsel argued that this evidence was relevant to the credibility of the victim's mother as to why she moved her family back to San Diego from Atlanta, and it was relevant to rebut the prosecution's suggestion that the victim was sexually inexperienced.  (Id. at RT 539-40, 556-58.)

After reviewing the evidence at issue, the prosecution again objected to the evidence

18

14-cv-1557-H-BLM

on relevancy grounds and also objected to it on hearsay grounds and on the grounds that delving into the investigation would require a trial within a trial.  (<u>Id.</u> at RT 551-52.)  A summary of the Atlanta investigation stated:  "'The family was being investigated by authorities in the state of Georgia.  And during this time, [the victim] disclosed that she orally copulated [her brother].  The family fled the state and was in San Diego County. The mother contacted the investigating social worker once but did not disclose her whereabouts or follow through with meeting the social worker.'"  (<u>Id.</u> at RT 552-53.)  The report stated that its disposition was "'inconclusive'" and showed an entry of date of June 15, 2007.  (<u>Id.</u>)

After hearing argument from defense counsel regarding the relevancy of the investigation, the trial court noted that depending on how the evidence related to the investigation would be ultimately presented at trial, there could be a hearsay or relevancy issue.  (<u>See</u> <u>id.</u> at RT 558-60, 564.)  But, the trial court noted that the evidence was likely relevant, (<u>Id.</u> at RT 560 ("But on the relevance issues, I – I think it is relevant."); <u>see also</u> <u>id.</u> at RT 561 ("I'm not prepared to say it's irrelevant.")), and rejected the prosecution's argument that the evidence was inadmissible because the disposition of the investigation was inconclusive.  (<u>Id.</u> at RT 563, 569.)  After a brief recess, the prosecution then stated that if the defense chose to present evidence of the Atlanta investigation as evidence of the victim's sexualization, then the prosecution would likely seek to introduce evidence that Petitioner had previously molested the victim when she was four years old – evidence the prosecution had not been planning on introducing at trial.  (<u>Id.</u> at RT 570-72.)

The trial court never made a definite ruling regarding the admissibility of the evidence related to the Atlanta investigation.  When the victim's mother re-took the stand, defense counsel never asked her any questions about the Atlanta investigation or sought to introduce evidence of the investigation.  (<u>See</u> Doc. No. 7-14, Lodgment No. 3 at RT 727-31, 737-40.)

"'[F]ederal habeas corpus relief does not lie for errors of state law.'" <u>Estelle</u>, 502 U.S. at 67.  Therefore, a petitioner is not entitled to habeas relief based on a claim that the trial court violated a state evidentiary rule.  <u>See</u> <u>id.</u>; <u>see also</u> <u>Jammal v. Van de Kamp</u>, 926 F.2d 918, 919 (9th Cir. 1991) ("[F]ailure to comply with the state's rules of evidence is neither a necessary nor a sufficient basis for granting habeas relief.").  Rather, to establish entitlement to habeas relief, a petitioner must show that the trial court's evidentiary ruling constituted a violation of his constitutional rights.  <u>See</u> <u>Estelle</u>, 502 U.S. at 67-70; <u>see also</u> <u>Henry v. Kernan</u>, 197 F.3d 1021, 1031 (9th Cir. 1999) ("Even where it appears that evidence was erroneously admitted, a federal court will interfere only if it appears that its admission violated fundamental due process and the right to a fair trial.").

"'[T]he Constitution guarantees criminal defendants "a meaningful opportunity to present a complete defense."'" <u>Jackson</u>, 133 S. Ct. at 1992.  But, "[a] defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions." <u>United States v. Scheffer</u>, 523 U.S. 303, 308 (1998).  The Constitution leaves trial judges "'wide latitude' to exclude evidence that is 'repetitive . . . , only marginally relevant' or poses an undue risk of 'harassment, prejudice, [or] confusion of the issues.'" <u>Crane</u>, 476 U.S. at 689.

Petitioner argues that the trial court's exclusion of the evidence related to the Atlanta investigation violated his constitutional rights.  (Doc. No. 1 at 6.)  But, a review of the record shows that the trial court never actually excluded this evidence.  During a hearing outside the presence of the jury, the trial court noted that depending on how defense counsel chose to present the evidence of the investigation at trial, there could be a relevancy or hearsay issue, but the trial court declined to exclude the evidence at that time.  (<u>See</u> Doc. No. 7-13, Lodgment No. 3 at RT 558-65, 569-75; <u>see, e.g.</u> <u>id.</u> at RT 561 ("I'm not prepared to say it's irrelevant.").)  When the victim's mother re-took the stand on cross-examination, defense counsel never asked her any questions about the Atlanta investigation or sought to

introduce evidence of the investigation.[5]  (See Doc. No. 7-14, Lodgment No. 3 at RT 727-31, 737-40.)  Because the trial court did not exclude this evidence from the trial, the trial court's decision did not violate Petitioner's constitutional rights, including his right to present a defense.

Moreover, even assuming that the trial court excluded the evidence, any potential constitutional error would have been harmless under the standard set forth in Brecht.  The evidence related to the Atlanta investigation did not directly rebut the large amount of evidence in the record showing that Petitioner had "sexual intercourse" with the victim as defined by the California Penal Code on the night of the incident.  (See Doc. No. 7-3, Lodgment No. 1 at CT 108-09; Doc. No. 7-15, Lodgment No. 3 at RT 779-80, 783, 835-37, 857-58, 904-07; Doc. No. 7-16, Lodgment No. 3 at RT 980-88, 1022-24.)  Accordingly, the exclusion of the evidence related to the Atlanta investigation from the trial would not have had a substantial and injurious effect or influence on the jury's verdict.[6]  Accordingly, the Court denies this claim on the merits.[7]

---

[5]     Defense counsel also did not ask questions about or seek to introduce evidence related to the Atlanta investigation when he cross-examined the victim.  (See generally Doc. No. 7-15, Lodgment No. 3 at RT 786-814.)

[6]     In his traverse and his objections to the R & R, Petitioner argues that his constitutional rights were violated when a San Diego County Sheriff's deputy destroyed his evidence related to the Atlanta investigation that Petitioner wanted presented at trial.  (Doc. No. 8 at 3-4; Doc. No. 13 at 3-4.)  Although it was improper for Petitioner to raise this claim for the first time in his traverse and in his objections to the R & R, see Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994) ("A Traverse is not the proper pleading to raise additional grounds for relief."); Nazarzai v. Hutchens, No. SACV 11-1160-DMG JPR, 2012 WL 3518538, at *1 (C.D. Cal. Aug. 14, 2012) ("Objections to a Report and Recommendation are not the appropriate vehicle for raising a new habeas claim."), nevertheless, the Court denies this claim on the merits for the same reasons that the Court denies the above claim.  Even assuming a constitutional violation occurred, any such error was harmless under Brecht.  Because, at trial, defense counsel ultimately declined to introduce any evidence related to the Atlanta investigation, the alleged destruction of evidence related to the investigation could not have had a substantial and injurious effect or influence on the jury's verdict.

[7]     Since the Court denies the claim on the merits, the Court need not reach the issue of procedural default.  (See Doc. No. 9 at 32-37.)  See also Flournoy v. Small, 681 F.3d 1000, 1004 n.1 (9th Cir. 2012)

1

### C.     Petitioner's Claim of Prosecutorial Misconduct

2

Petitioner argues that the prosecution violated his due process rights by stating

3   during a pre-trial hearing that Petitioner had threated Ava Loftis.  (Doc. No. 1 at 6; see

4   Doc. No. 7-9, Lodgment No. 3 at RT 166-68.)  "A prosecutor's improper comments will

5   be held to violate the Constitution only if they so infected the trial with unfairness as to

6   make the resulting conviction a denial of due process."  Parker v. Matthews, 132 S. Ct.

7   2148, 2153 (2012) (internal quotation marks omitted) (quoting Darden v. Wainwright, 477

8   U.S. 168, 181 (1986)).   In determining whether a comment infected the trial with

9   unfairness, a court must view the remark in the context of the entire trial.  See Greer v.

10   Miller, 483 U.S. 756, 765-66 (1987); see, e.g., Donnelly v. DeChristoforo, 416 U.S. 637,

11   643 (1974).

12

Petitioner has failed to identify anywhere in the record where the prosecutor

13   mentioned or referenced the threat accusations at issue before the jury during the trial.  The

14   prosecution did not refer to or ask about these alleged threats during his direct examination

15   of Ava Loftis.  (See generally Doc. No. 7-14, Lodgment No. 3 at RT 657-666, 677-80.)

16   And the prosecution did not refer to the alleged threats during his closing statement.  (See

17   generally Doc. No. 7-18, Lodgment No. 3 at RT 1184-1211, 1250-59.)   Because the

18   comments at issue were never made before the jury, the comments could not have infected

19   the trial with such unfairness as to constitute a due process violation.  Accordingly, the

20   Court denies the claim on the merits.[8]

21   ///

22   ///

23

24

25   (holding that a court may reach the merits of a habeas claim despite an asserted procedural bar when the
claim "clearly fails on the merits"); Franklin v. Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002) (same).

26

27   [8]     Since the Court denies the claim on the merits, the Court need not reach the issue of procedural
default.  (See Doc. No. 9 at 39.)

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### D.  The Trial Court's Denial of Petitioner's Motion to Substitute Counsel

Petitioner alleges a due process violation based on the trial court's denial of his Marsden[9] motion to substitute counsel.  (Doc. No. 1 at 6.)  Prior to trial, Petitioner moved to substitute his counsel pursuant to Marsden, and the trial court denied the Marsden motion.  (See Doc. No. 7-4, Lodgment No. 1 at CT 246; Doc. No. 7-7, Lodgment No. 3 at RT 3-4, 32.)[10]  In alleging that the trial court's denial of his Marsden motion violated his constitutional rights, Petitioner fails to articulate any reason why the trial court's decision was erroneous or how the decision prejudiced him in anyway.  (See Doc. No. 1 at 6.) "Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief."  James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994); see Greenway v. Schriro, 653 F.3d 790, 804 (9th Cir. 2011) ("[Petitioner's] cursory and vague claim cannot support habeas relief.").  Accordingly, the Court denies this claim on the merits.[11]

### E.     Judicial Bias

Petitioner alleges a due process violation based on the trial judge's failure to act impartially and diligently.  (Doc. No. 1 at 6.)  But Petitioner fails to articulate any factual basis for his claim that the trial judge failed to act impartially or diligently.  Petitioner fails to identify any potential bias held by the trial judge or explain how he was prejudiced by such an alleged bias.  "Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief."  James, 24 F.3d at 26; see Greenway, 653 F.3d

---

[9]     People v. Marsden, 2 Cal. 3d 118 (1970).  Under California law, a request for a Marsden motion is when a criminal defendant requests substitution of court-appointed counsel.  See Schell v. Witek, 218 F.3d 1017, 1021 (9th Cir. 2000).

[10]    The transcript of the Marsden hearing was sealed and is not contained in the Lodgment.  (See Doc. No. 7-7, Lodgment No. 3 at RT 4.)

[11]    Since the Court denies the claim on the merits, the Court need not reach the issue of procedural default.  (See Doc. No. 9 at 38.)

14-cv-1557-H-BLM

at 804.  Accordingly, the Court denies this claim.

**III.     Petitioner's Ineffective Assistance of Counsel Claims**

Petitioner alleges that he was provided with ineffective assistance of counsel in violation of the Sixth Amendment.  (Doc. No. 1 at 7.)

A.     Legal Standards for § 2254 Ineffective Assistance of Counsel Claims

The Sixth Amendment entitles criminal defendants to the effective assistance of counsel at all critical stages of a criminal proceeding.  Lafler v. Cooper, 132 S. Ct. 1376, 1385-86 (2012).  In order to prove a Sixth Amendment ineffective assistance of counsel claim, the petitioner must establish (1) that counsel's performance was deficient, and (2) that he was prejudiced by counsel's deficient performance.  Strickland v. Washington, 466 U.S. 668, 688, 692 (1984); Knowles v. Mirzayance, 556 U.S. 111, 122 (2009).

In order to satisfy the first prong of the test, the petitioner must show his counsel's performance "fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688.  "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Id.  "Judicial scrutiny of counsel's performance must be highly deferential," and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Id. at 689; see also Padilla v. Kentucky, 559 U.S. 356, 371 (2010) ("Surmounting Strickland's high bar is never an easy task.").

In order to satisfy the prejudice prong of the test, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

In evaluating an ineffective assistance of counsel claim raised in a § 2254 habeas petition, a federal habeas court "must take a 'highly deferential' look at counsel's performance through the 'deferential lens of § 2254(d).'" Pinholster, 563 U.S. at 190

24

(citations omitted); see also Richter, 562 U.S. at 105 ("The standards created by Strickland and § 2254(d) are both 'highly deferential.'"). Thus, a federal habeas court's review of an ineffective assistance of counsel claim in a § 2254 habeas petition is "'doubly deferential.'" Pinholster, 563 U.S. at 190. The reviewing court must determine "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Richter, 562 U.S. at 105.

B.    IAC Claim Raised on Direct Appeal

Petitioner argues that his trial counsel was ineffective due to counsel's failure to subpoena Dr. Tiscon to testify at Petitioner's trial. (Doc. No. 1 at 7.) This particular IAC claim was raised on direct appeal and denied by the state courts. (See Doc. Nos. 7-26, 7-29, 7-30, 7-31, Lodgment Nos. 5, 8, 9, 10.) Thus, in conducting the § 2254(d) review, the Court looks through the California Supreme Court's summary denial of Petitioner's petition for review and evaluates the California Court of Appeal's reasoned decision denying Petitioner's IAC claim. See, e.g., Brumfield, 135 S. Ct. at 2276; Cannedy, 706 F.3d at 1156. The relevant portions of the California Court of Appeal's decision are as follows:

> Dunn also contends the judgment must be reversed because his trial counsel's failure to serve Ticson with a subpoena to attend the trial violated his constitutional right to the effective assistance of counsel. We disagree.
>
> Under both the Sixth Amendment to the federal Constitution and article I, section 15 of the state Constitution, a criminal defendant has the right to the effective assistance of counsel. (People v. Ledesma (1987) 43 Cal. 3d 171, 215, 233 Cal. Rptr. 404, 729 P.2d 839 (Ledesma).) To prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance fell below an objective standard of reasonableness, and that there is a reasonable probability the result of the trial would have been different had counsel's errors not occurred. (Strickland v. Washington (1984) 466 U.S. 668, 687-688, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (Strickland); People v. Benavides (2005) 35 Cal. 4th 69, 92-93, 24 Cal. Rptr. 3d 507, 105 P.3d 1099.) Where, as here, "a defendant challenges a conviction, the question is whether

25

1
2
3
4
5
6
7
8
9
10
11
12
13
14

there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." (Strickland, at p. 695, 104 S. Ct. 2052; accord, Ledesma, at p. 218, 233 Cal. Rptr. 404, 729 P.2d 839.)  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." (Strickland, at p. 694, 104 S. Ct. 2052; accord, Ledesma, at p. 218, 233 Cal. Rptr. 404, 729 P.2d 839.)

As we explained earlier (see pt. III.A.3., ante), we are confident the absence of Ticson's testimony did not affect the outcome of Dunn's trial.  The evidence against Dunn was strong and largely undisputed.  The testimony expected from Ticson would merely have duplicated part of the testimony of the People's expert and did not respond to the People's theory of guilt.  Under these circumstances, even if counsel were deficient in not serving Ticson with a subpoena to appear at trial, it is not reasonably probable the jury would have had a reasonable doubt about Dunn's guilt.  He is, therefore, not entitled to reversal based on ineffective assistance of counsel.  (Strickland, supra, 466 U.S. at p. 692, 104 S. Ct. 2052 ["deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution"]; accord, Ledesma, supra, 43 Cal.3d at p. 217, 233 Cal. Rptr. 404, 729 P.2d 839.)

15

Dunn, 205 Cal. App. 4th at 1101 (footnote omitted).

16
17
18
19
20
21
22
23
24
25

The California Court of Appeal's decision reasonably applied the Supreme Court's clearly established precedent governing ineffective assistance of counsel claims under the Sixth Amendment – Strickland v. Washington.  In order to satisfy the prejudice prong of the Strickland test, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.  The California Court of Appeal reasonably concluded that Petitioner failed to satisfy Strickland's prejudice prong because the testimony expected from Dr. Tiscon would not have affected the outcome of Petitioner's trial. Dunn, 205 Cal. App. 4th at 1101.

26
27

The appellate court correctly explained that Dr. Tiscon's expected testimony would

28

merely have been duplicative of the testimony of the prosecution's expert and would not responded to the prosecution's theory of guilt.  Id.  The prosecution's expert witness Dr. Kaufhold testified before the jury that she found no signs of trauma or injury when she examined the victim's genitalia on September 21, 2007, and that if penetration of the victim's anatomical vagina had occurred, she would have expected to see serious injuries. (Doc. No. 7-15, Lodgment No. 3 at RT 901, 907-08, 919, 921-22; see also Doc. No. 7-18, Lodgment No. 3 at RT 1208 ("There's no evidence here and no one's saying that [Petitioner] penetrated [the victim's] anatomical vagina.").)  In addition, neither of the charged offenses required penetration of the victim's anatomical vagina as an element of the offense.  See Mendoza, 240 Cal. App. 4th at 79 ("Sexual intercourse [in section 288.7(a)] means any penetration, no matter how slight, of the vagina or genitalia by the penis."); Karsai, 131 Cal. App. 3d at 232 ("The penetration which is required is sexual penetration and not vaginal penetration.  Penetration of the external genital organs is sufficient to constitute sexual penetration . . . ."); Asencio, 166 Cal. App. 4th at 1206 ("Penetration is irrelevant for [a] charge [under section 288(a)]."); see also CALCRIM Nos. 1110, 1127.

Further, the California Court of Appeal correctly explained that the evidence against Dunn was strong and largely undisputed.  Dunn, 205 Cal. App. 4th at 1101.  Specifically, Dr. Ticson's proposed testimony would not have rebutted or undermined the other evidence of penetration in the record -- in particular, (1) the victim's testimony that Petitioner touched his private part to her private part, (Doc. No. 7-15, Lodgment No. 3 at RT 779-80, 783; see also id. at RT 835-37; Doc. No. 7-3, Lodgment No. 1 at CT 108-09); (2) the evidence showing that Petitioner's blood tested positive for syphilis, (Doc. No. 7-15, Lodgment No. 3 at RT 857-58); (3) Dr. Minka's testimony that after the incident, she diagnosed the victim with syphilis and that she had to manipulate the victim's labia majora to see the full extent of the syphilitic lesion, (Doc. No. 7-16, Lodgment No. 3 at RT 980-

27

88); (4) Dr. Katz's testimony that a syphilitic lesion forms at the point of contact within 10 to 90 days of exposure, (id. at RT 1022-24); and (5) Dr. Kaufhold's testimony that Petitioner could have penetrated the vestibule right outside the victim's vaginal opening and that would have been consistent with her finding of no injuries during the examination she performed, (Doc. No. 7-15, Lodgment No. 3 at RT 904-07).

The California Court of Appeal's determination that Petitioner failed to satisfy Strickland's prejudice prong was reasonable in light of the record that was before the state court.  Accordingly, the state court's denial of Petitioner's IAC claim on direct appeal was not contrary to or an unreasonable application of clearly established federal law. Accordingly, the Court denies this claim of the petition.

C.    IAC Claim Raised In State Habeas Proceedings

Petitioner also contends that his trial counsel was ineffective because: (1) counsel harbored animosity toward Petitioner due to Petitioner submitting a Marsden motion; and (2) counsel failed to preserve witnesses that would prove his innocence.  (Doc. No. 1 at 7.) These two IAC claims were raised in Petitioner's state habeas petition which was summarily denied by the California Supreme Court in an order stating: "The petition for writ of habeas corpus is denied on the merits with regard to petitioner's claim of ineffective assistance of trial counsel."  (Doc. No. 7-37, Lodgment No. 16; Doc. No. 1 at 17.)  Because the California Supreme Court and the lower state courts did not articulate the reasons for the denial of these claims, in evaluating these IAC claims, the Court must "engage in an independent review of the record and ascertain whether the state court's decision was objectively unreasonable."  Castellanos v. Small, 766 F.3d 1137, 1145 (9th Cir. 2014).  In so doing, the Court "must determine what arguments or theories . . . could have supported . . . the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court."  Richter, 562 U.S. at 102.

14-cv-1557-H-BLM

After conducting an independent review of the record, the Court concludes that the California Supreme Court's denial of these IAC claims was not objectively unreasonable. With respect to his claim that defense counsel was ineffective because counsel harbored animosity towards Petitioner for submitting a <u>Marsden</u> motion, Petitioner fails to identify any portion of the record showing where defense counsel exhibited animosity towards him. Further, Petitioner fails to adequately explain how he was prejudiced by such alleged animosity. Petitioner does not explain what specific actions he contends defense counsel either did or did not take due to his alleged animosity, or explain how those actions or inactions prejudiced his case. Therefore, Petitioner has failed to show that defense counsel's performance was deficient on this basis, or that he was prejudiced by his counsel's performance with respect to this issue. Accordingly, the state court's denial of this IAC claim on collateral review was not contrary to or an unreasonable application of clearly established federal law, and, therefore, the Court denies this federal habeas claim.

With respect to his claim that defense counsel was ineffective for failing to preserve witnesses, Petitioner has failed to identify any specific witness that defense counsel allegedly failed to preserve. (<u>See also</u> Doc. No. 7-36, Lodgment No. 15 at 17.) In addition, Petitioner has failed to explain what testimony would have come from these alleged witnesses or how it would have been favorable to his defense. Therefore, Petitioner has failed to show that defense counsel's performance was deficient on this basis, or that he was prejudiced by counsel's performance with respect to this issue. <u>See</u> <u>Bragg v. Galaza</u>, 242 F.3d 1082, 1088 (9th Cir. 2001) (rejecting IAC claim where petitioner failed to identify any information that would be gained from the witness that defense counsel did not already have from other witnesses, and petitioner's claim was based on "nothing more than speculat[ion] that, if interviewed, [the witness] might have given information helpful to [petitioner]"); <u>Dows v. Wood</u>, 211 F.3d 480, 486 (9th Cir. 2000) (rejecting IAC claim where there was no evidence in the record that the witness actually exists or evidence

showing that the witness would have provided testimony helpful to the defense). Accordingly, the state court's denial of this IAC claim on collateral review was not contrary to or an unreasonable application of clearly established federal law, and, therefore, the Court denies this federal habeas claim.

### D.   Remaining Trial Counsel IAC Claims

In the remaining aspects of Petitioner's IAC claims related to his trial counsel, Petitioner alleges that his counsel was ineffective because:  (1) counsel failed to adequately investigate, prepare, and present mental health evidence in support of a diminished capacity defense; (2) counsel did not take adequate steps to maintain petitioner's innocence due to a conflict of interest; and (3) counsel failed to challenge the prosecutor.  (Doc. No. 1 at 7.) Petitioner did not raise these specific IAC claims on direct appeal or through a state habeas petition.

With respect to his claim that defense counsel was ineffective because he failed to adequately investigate, prepare, and present mental health evidence in support of a diminished capacity defense, Petitioner has failed to allege that he suffers from any mental disease or defect or that any such mental health evidence could have been obtained that would have been material to his defense.   Petitioner's speculation as to what an investigation into his mental health might have produced is insufficient to satisfy Strickland's prejudice prong.  See Gonzalez v. Knowles, 515 F.3d 1006, 1016 (9th Cir. 2008) ("Such speculation is plainly insufficient to establish prejudice"); Bible v. Ryan, 571 F.3d 860, 871 (9th Cir. 2009) (same).  Accordingly, the Court denies this claim on the merits.

With respect to his claim that defense counsel was ineffective due to a conflict of interest, Petitioner has failed to identify any conflict of interest defense counsel may have had, how that alleged conflict of interest affected counsel's representation of Petitioner, or how Petitioner was prejudiced by the alleged conflict of interest.  "Conclusory allegations

30

which are not supported by a statement of specific facts do not warrant habeas relief." James, 24 F.3d at 26; see Greenway, 653 F.3d at 804; see also Washington v. Lampert, 422 F.3d 864, 872 (9th Cir. 2005) ("To prove an IAC claim premised on an alleged conflict of interest, a petitioner must 'establish that an actual conflict of interest adversely affected his lawyer's performance.'" (quoting Cuyler v. Sullivan, 446 U.S. 335, 350 (1980))). Accordingly, the Court denies this claim on the merits.

With respect to his claim that defense counsel was ineffective for failing to challenge the prosecution, Petitioner has failed to identify what specific challenges defense counsel should have raised or how he was prejudiced by defense counsel's alleged failure to raise certain challenges. "Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief." James, 24 F.3d at 26; see Greenway, 653 F.3d at 804. Accordingly, the Court denies this claim on the merits.[12]

## IV.   Additional Claims

In his objections to the R & R, Petitioner argues for the first time (1) that his appellate counsel was ineffective for failing to raise all of Petitioner's potentially meritorious issues; and (2) that the prosecution committed a Brady[13] violation. (Doc. No. 13 at 3-7.) Although it was improper for Petitioner to raise these claims for the first time in his objections to the R & R, see Nazarzai, 2012 WL 3518538, at *1 ("Objections to a Report and Recommendation are not the appropriate vehicle for raising a new habeas claim."), nevertheless, the Court denies these claims on the merits.

With respect to Petitioner's Brady claim, Petitioner argues that the prosecution violated Brady by failing to further investigate the activities of the victim in Georgia. (Doc. No. 13 at 5-7.) In order to establish a Brady claim, a petitioner must show that the evidence

---

[12]   Since the Court denies these claims on the merits, the Court need not reach the issue of procedural default. (See Doc. No. 9 at 46-47.)

[13]   Brady v. Maryland, 373 U.S. 83 (1963).

31

at issue satisfies the following three "essential elements": "'The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.'"   Banks v. Dretke, 540 U.S. 668, 691 (2004) (quoting Strickler v. Greene, 527 U.S. 263, 281-82 (1999)).  Petitioner does not state what additional information could have been obtained regarding the victim's activities in Atlanta that defense counsel did not already have access to through the investigation by the Atlanta Child Welfare authorities.  Thus, Petitioner has failed to show that the evidence at issue was material.  See id. at 698 (stating that Brady's materiality requirement is satisfied when "'the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict'", i.e., a "'reasonable probability of a different result'"); see also United States v. Kohring, 637 F.3d 895, 902 (9th Cir. 2011) (holding that the suppression of evidence that is merely cumulative does not violate Brady).  Further, Petitioner cannot show that he was prejudiced by any alleged failure by the prosecution to further investigate the victim's activities in Atlanta because, at trial, defense counsel ultimately declined to introduce any evidence related to the Atlanta investigation.  Accordingly, the Court denies Petitioner's Brady claim.

With respect to Petitioner's claim that his appellate counsel was ineffective, Petitioner has failed to identify a nonfrivolous issue that his appellate counsel could have raised on direct appeal.  All of the claims raised in his federal habeas petition and in Petitioner's other federal filings fail on the merits.  Therefore, Petitioner has failed to establish that his appellate counsel's performance was objectively unreasonable or that Petitioner was prejudiced by his appellate counsel's actions.  See Smith v. Robbins, 528 U.S. 259, 285 (2000) (explaining that to succeed on a claim that appellate counsel was ineffective, the petitioner must show that his "counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them"); Moormann v. Ryan, 628 F.3d

1102, 1107 (9th Cir. 2010) (explaining that appellate counsel does not act unreasonably "in failing to raise a meritless claim" and a petitioner is not prejudiced by the failure to raise a meritless claim); <u>Sexton v. Cozner</u>, 679 F.3d 1150, 1157 (9th Cir. 2012) ("[W]e cannot hold counsel ineffective for failing to raise a claim that is meritless."). Accordingly, the Court denies Petitioner's claim that his appellate counsel was ineffective.

## V.    Certificate of Appealability

A certificate of appealability may issue only if the defendant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court has denied the petitioner's constitutional claims on the merits, a defendant satisfies the above requirement by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000). The Court concludes that reasonable jurists would not find the Court's assessment of Defendant's claims debatable or wrong. Accordingly, the Court declines to issue a certificate of appealability.

## <u>Conclusion</u>

For the reasons stated, the Court denies Petitioner's § 2254 petition for habeas corpus and adopts the magistrate judge's report and recommendation. Additionally, the Court denies Petitioner a certificate of appealability.

**IT IS SO ORDERED.**

DATED: June 1, 2016

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

14-cv-1557-H-BLM